Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000906
15-OCT-2019
08:03 AM

NO. CAAP-18-0000906
(Consolidated with No. CAAP-18-0000907)

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-18-0000906**

In the Interest of HK and KK

and

**CAAP-18-0000907**

In the Matter of the Guardianship of HK and KK

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NOS. FC-S No. 16-00210 and FC-G No. 18-1-6064)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise, and Hiraoka, JJ.)

EK (**Father**) was defaulted for not appearing at a joint hearing in two family court cases.  He appeals from orders denying his motions to set aside the defaults, entered by the Family Court of the First Circuit (**Family Court**)[1] on November 7, 2018.  For the reasons explained below, we affirm both orders.

**FC-S No. 16-00210/CAAP-18-0000906**

Father and AT (**Mother**) have two children, HK and KK (collectively, the **Children**).  On October 13, 2016, Petitioner-Appellee State of Hawai'i Department of Human Services (**DHS**) filed a petition to place HK (then age 14) and KK (then age 13)

---

[1]    The Honorable Paul T. Murakami signed both orders.

in temporary foster custody pursuant to the Hawai'i Child Protective Act, Hawaii Revised Statutes (**HRS**) Chapter 587A. The case was docketed by the Family Court as FC-S No. 16-00210 (the **Child Protective Act Case**).

Father appeared at the October 17, 2016 return. The Family Court[2] ordered that the Children remain in temporary foster custody and continued the hearing to October 20, 2016. The Family Court also appointed counsel to represent Father.

Father appeared with counsel at the October 20, 2016 hearing. The Family Court[3] ordered that the Children remain in temporary foster custody and set a contested case hearing for November 1, 2016. The Family Court also appointed a guardian ad litem (**GAL**) for the Children.

Father appeared with counsel at the November 1, 2016 hearing. The Family Court[4] ordered that the Children remain in temporary foster custody, set the date for the Children's entry into foster care at November 1, 2016, approved a family service plan, and set various report deadlines. The parties were ordered to appear at a periodic review hearing set for February 6, 2017.

Father appeared with counsel at the February 6, 2017 hearing. The Family Court[5] found that Father "has made some progress toward resolving the problems that necessitated place-ment" of the Children in foster care. The parties were ordered to appear at a periodic review and permanency hearing set for April 5, 2017.

Father appeared with counsel at the April 5, 2017 hearing. The Family Court[6] set report deadlines and ordered the parties to appear at a periodic review and permanency hearing set for June 1, 2017.

---

[2]     The Honorable Catherine H. Remigio presided.

[3]     The Honorable Catherine H. Remigio presided.

[4]     The Honorable Catherine H. Remigio presided.

[5]     The Honorable Catherine H. Remigio presided.

[6]     The Honorable Frances Q.F. Wong presided.

Father did not appear at the June 1, 2017 hearing. Father's counsel did not know why Father failed to appear. The Family Court[7] entered Father's default and set a further periodic review and permanency hearing for November 16, 2017. On September 1, 2017, the Family Court[8] entered an order discharging Father's counsel because Father had been defaulted and legal representation was no longer required.

Father did not appear at the November 16, 2017 hearing. The Family Court[9] found that Father has not made progress toward resolving the problems that necessitated foster care placement, set reporting deadlines, and set a further periodic review and permanency hearing for February 8, 2018.

On February 8, 2018, the Family Court[10] entered an order re-appointing counsel for Father. Father appeared with counsel at the February 8, 2018 hearing, and orally moved to have his default set aside. The Family Court[11] granted the motion and set aside the default. Father's counsel stated that Father agreed with the legal guardianship by the resource caregivers, **SK** and **RK**. The Family Court set a further periodic review and permanency hearing for May 31, 2018.

### FC-G No. 18-1-6064/CAAP-18-0000907

On April 5, 2018, DHS filed a petition for appointment of the resource caregivers, SK and RK, as co-guardians of the Children. The case was docketed by the Family Court as FC-G No. 18-1-6064 (the **Guardianship Case**). A hearing was set for May 31, 2018, together with the hearing scheduled for the Child Protective Act Case.

---

[7]     The Honorable Paul T. Murakami presided.

[8]     The Honorable Catherine H. Remigio signed the order.

[9]     The Honorable Linda S. Martell presided.

[10]     The Honorable Paul T. Murakami signed the order.

[11]     The Honorable Paul T. Murakami presided.

### Concurrent Proceedings

Father appeared with counsel at the May 31, 2018 concurrent hearing in the Child Protective Act Case and the Guardianship Case, and addressed the Family Court:[12]

> [Father]: So when my -- my kids got -- the whole reason this whole situation happened is me and my family had a blow-out. They wanted me out of my house, they wanted to keep my kids there. I took my kids with me. The only place I had to go was, you know, not a good place, so my kids got removed from -- they made a complaint to the school, they got removed.
>
> Department of Human Services said to provide a safe family home, in which I did. I had a written affidavit by Rachel-Joy Nisperos, she's a real estate broker and she has her own business, that I could stay with her. Department of Human Services child -- child support -- child welfare services said no. They changed their records, put a whole bunch of stipulations on me. I blew up in court. They said, eh, you know what, you're not gonna see your kids for a year. I didn't see my kids for a year. Department says that, hey, your kids don't want to see you, they're afraid of you. Last hearing they said, oh, yeah, your kids -- your kids were afraid there was gonna -- you was gonna yell at them, that's why you didn't see them for a whole year.
>
> So I -- I feel that, eh, no matter what I do, I'm not gonna get my kids back, and they got it in a way to where I'm gonna have to owe child support till they're 18. I already get everything deducted off of my -- my -- my paychecks. I get garnished for -- for other kids that -- that I don't -- one is in Maui, I have another one in Kaneohe, and I got this other kid in -- so I -- I'm -- I'm like, you know what, I'm kinda overwhelmed 'cause I -- for this past -- this whole time I've been working, staying employable, staying stable in a house, staying clean and sober, and -- and building up my credit so I can have a life for myself, and it's really frustrating to work and have them take all -- garnish all my money and to take my -- my tax returns.
>
> THE COURT: Okay.
>
> [Father]: So that's -- that's the point where I'm at. 'Cause, you know, I -- I honestly think that, you know what, I -- I can do -- I can jump through all the hoops and do everything that CPS wants to do with me, but you know what, the courts made decision, the department did -- made the decision of what's gonna happen with my kids, and I just feel that it's unfair for them to put them in guardianship and garnish all my checks. If [SK] wants the kids, then adopt the kids.
>
> THE COURT: Okay.
>
> [Father]: If [SK] wants them so bad, you know.

---

[12] The Honorable Paul T. Murakami presided.

>           THE COURT:  Okay.  No, now I understand the position.
> Got it.  But then that kind of intersects with [Mother's
> counsel] and his client.  I don't know if mother's willing
> to go [Termination of Parental Rights] and an adoption.
>
>           [Father]:  Well, if -- if -- if she -- if she agrees
> to the adoption, then she'll be -- she won't be obligated to
> child support either if she decides to work later in the
> future.
>
> . . . .
>
>           So I'm pretty sure that she would agree to adopt--
> adoption --
>
>           THE COURT:  Okay.
>
>           [Father]:  -- versus guardianship, where we would owe
> child support.

The Family Court granted DHS's motion to continue the concurrent hearings.  The parties were ordered to appear at a hearing set for August 6, 2018, in both the Child Protective Act Case and the Guardianship Case.

Father appeared with counsel at the August 6, 2018 hearing.  Father's counsel stated:

>           Well, as father had informed the Court at the last
> hearing on May 31st, he preferred the termination of his
> rights and adoption over legal guardianship.  He still has
> that position, Your Honor.

The GAL stated:

>           The resource caregivers are not in a position to
> adopt, but they are supportive of the long-term care of the
> children, and they're doing very well.

The Family Court[13] stated:

>           I can only rule on what's brought before me.  Right
> now I've got a -- I've got a guardianship you folks aren't
> moving forward on, and this is still a foster custody case.
> I'm going to set it for review in three months.  Figure out
> what you folks want to do.
>
> . . . .
>
>           Will this case benefit from a further Ohana Conference
> or mediation or something (inaudible)?  'Cause there seems
> to be a lack of understanding as to what rights,
> responsibilities, and obligations are in this case.

---

[13]     The Honorable Paul T. Murakami presided.

. . . .

> The -- the point I'm trying to make is that rights, responsibilities, obligations, and duties goes to everyone in the room, because as was appropriately pointed out, if you folks move for a [Termination of Parental Rights] and the resource caregivers aren't inclined to -- for adoption, in fact they may even turn the kids out at that point, you're cutting off your nose to spite your face. You really should think about what your next moves are, all of you.

The Family Court referred the Child Protective Act Case and the Guardianship Case to the Oʻahu Child Welfare Mediation Program, set reporting deadlines, and ordered the parties to appear at a further hearing on October 22, 2018.

Father did not appear at the October 22, 2018 hearing. Father's counsel asked that Father be excused. Counsel explained:

> Your Honor, I called my client at 12:30 this after-noon, he answered. It appeared that he had forgotten about this court hearing. He was at a doctor's appointment. He did participate by telephone during the mediation that was requested, so he was -- he did speak to the mediator, Your Honor.
>
> . . . .
>
> THE COURT: He was supposed to be here. He was ordered to be here. I'm going to default him.

The Family Court[14] denied counsel's oral request that Father be allowed to participate by telephone, granted the guardianship petition and appointed SK and RK as co-guardians of the Children in the Guardianship Case, revoked the temporary foster custody and terminated jurisdiction in the Child Protective Act case, and discharged Father's counsel effective thirty days from the hearing.

On November 7, 2018, Father's counsel submitted motions to set aside Father's default in both the Child Protective Act Case and the Guardianship Case. The motions were supported by a declaration of counsel stating:

> That on October 22, 2018 father did not appear at the courthouse for the mediation set for 12:30 p.m. Father was

---

[14] The Honorable Paul T. Murakami presided.

6

> available by telephone and twice spoke to the mediator with
> declarant listening on the speaker phone. Father did not
> appear at the courthouse because he had forgotten the court
> date and was at psychologist Dr. Alisa Antonio's office in
> the downtown area for an evaluation for employment purposes.
> After the appointment with Dr. Antonio father was scheduled
> for a urinalysis test also for employment purposes and also
> in the downtown area[.]

The Family Court stamped "DENIED WITHOUT HEARING" and filed both motions. Father appealed in both cases. We consolidated the cases for appeal.

### Standards of Review

> [T]he family court possesses wide discretion in making its
> decisions and those decision [sic] will not be set aside
> unless there is a manifest abuse of discretion. Thus, we
> will not disturb the family court's decisions on appeal
> unless the family court disregarded rules or principles of
> law or practice to the substantial detriment of a party
> litigant and its decision clearly exceeded the bounds of
> reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation omitted). A ruling on a motion to set aside a default is reviewed for abuse of discretion. Gonsalves v. Nissan Motor Corp. in Haw., 100 Hawai'i 149, 158, 58 P.3d 1196, 1205 (2002).

The family court's findings of fact are reviewed under the "clearly erroneous" standard. Fisher, 111 Hawai'i at 46, 137 P.3d at 360. A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding, or despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made. Id. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Id.

### The Family Court Did Not Abuse its Discretion in Refusing to Set Aside Father's Second Default

A party seeking to set aside a default must show (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious

defense, and (3) that the default was not the result of inexcusable neglect or a wilful act. BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 76, 549 P.2d 1147, 1150 (1976). The required findings are cumulative, not alternative. See Citicorp Mortg., Inc. v. Bartolome, 94 Hawai'i 422, 439, 16 P.3d 827, 844 (App. 2000) ("[I]f a movant fails to meet any one prong of the test, a trial court does not abuse its discretion in refusing to set aside a default judgment.").

The Family Court made the following findings of fact:

> 72. [Father] was physically present at the August 6, 2018 concurrent proceedings in both cases, and was ordered to appear and to be physically present at the October 22, 2018 concurrent proceedings in both cases. He had notice of the October 22, 2018 concurrent proceedings in both cases, the court order to be physically present and the consequences if he failed to be physically present at the October 22, 2016 concurrent proceedings in both cases.

> 73. [Father] failed to obey the court's August 6, 2018 order to be physically present at the October 22, 2018 concurrent hearing in both cases.

> 74. [Father] was not authorized to participate in the October 22, 2018 concurrent proceedings in both cases by way of telephone.

> 75. According to [Father], by way of the Declaration of Counsel in support of his Motion to Set-Aside Default, dated October 31, 2018, [Father] "had forgotten about the court date." According to [Father]'s counsel's declaration (which was not based on information and belief), [Father] also had an appointment with a psychologist at the same time. [Father]'s reason for his failure to be physically present at the October 22, 2018 concurrent proceedings is the result of inexcusable neglect or a willful act.

> 76. Due to the length of time that the Children have been in foster care since their November 1, 2016 Date of Entry into Foster Care, it would not be in the Children's best interests to delay the proceedings in both cases; such a delay if the default against [Father] were set aside in both cases. As a result, the Children would be prejudiced if the court were to set aside the defaults against [Father] in both cases.

These findings are supported by substantial evidence in the record and are not clearly erroneous. Father wanted the Children to be adopted rather than placed in a guardianship because he did not want to continue paying child support. The Children were doing very well with the temporary foster caregivers SK and RK, and SK and RK were willing to become co-guardians, but they were

not in a position to adopt the Children. The Children would be prejudiced if the co-guardianship was vacated.

Father did not demonstrate that he had a meritorious defense.

Father had been defaulted in the Child Protective Act Case once before, so he knew the consequences of failing to appear at a hearing. To establish excusable neglect, Father had to show that his failure to appear for the Family Court hearing was not due to his "own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavailable hindrance or accident or because of reliance on the care and vigilance of [his] counsel or on a promise made by the adverse party." Excusable Neglect, Black's Law Dictionary (11th ed. 2019). Father simply "forgetting" about the October 22, 2018 hearing constituted inexcusable neglect. For all of these reasons, the Family Court did not abuse its discretion in denying Father's motions to set aside his defaults under the circumstances of this case. The Family Court's November 7, 2018 denials of Father's motions to set aside his defaults in the Child Protective Act Case and the Guardianship Case are affirmed.

DATED: Honolulu, Hawai'i, October 15, 2019.

On the briefs:

Herbert Y. Hamada,
for Father-Appellant.

Patrick A. Pascual,
Julio C. Herrera,
Erin L.S. Yamashiro,
Erin K. Torres,
Deputy Attorneys General,
for Petitioner-Appellee.

Chief Judge

Associate Judge

Associate Judge